UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                       Case No. 20-CR-26

YOUSEF O. BARASNEH,

        Defendant.

---

## PLEA AGREEMENT

---

1.    The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Benjamin Proctor, Assistant United States Attorney, and the defendant, Yousef O. Barasneh, individually and by attorney John Campion, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in a one-count indictment, which alleges a violation of Title 18, United States Code, Section 241.

3.    The defendant has read and fully understands the charge contained in the indictment. He fully understands the nature and elements of the crime with which he has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT ONE
(Conspiracy Against Rights)

**THE GRAND JURY CHARGES THAT:**

1. At all times material to this indictment, Yousef O. Barasneh was a member of "The Base," a white-supremacist group.

2. At all times material to this indictment, the Beth Israel Sinai Congregation was an organization consisting of Jewish members and guests who worshiped and conducted other religious activities in a building located at 3009 Washington Avenue, Racine, Wisconsin, which served as a synagogue.

3. From on or about September 15, 2019, and continuing through on or about September 23, 2019, in the State and Eastern District of Wisconsin and elsewhere,

**YOUSEF O. BARASNEH**

knowingly and willfully conspired and agreed with other persons known and unknown to the grand jury, to injure, oppress, threaten, and intimidate non-white and Jewish citizens of the United States in the free exercise and enjoyment of the right secured by the Constitution and laws of the United States, to hold and use real and personal property in the same manner as that right is enjoyed by white citizens, as guaranteed by Title 42, United States Code, Section 1982.

4. It was a plan and purpose of the conspiracy that Barasneh and his co-conspirators take action against property associated with non-white and Jewish citizens to show the strength and cohesion of "The Base."

5. In furtherance of the conspiracy, Barasneh and his co-conspirators used a messaging platform through which they discussed vandalizing property associated with African Americans and Jewish Americans and agreed that they should take action between September 20, 2019, and September 25, 2019, to vandalize such property.

6. In furtherance of the conspiracy, on or about September 21, 2019, Barasneh spray-painted anti-Semitic symbols and language on the Beth Israel Sinai Congregation building in Racine, Wisconsin.

All in violation of Title 18, United States Code, Section 241.

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able

to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

> At all times relevant, Barasneh was a member of "The Base," a neo-Nazi group that aims to unify militant white supremacists around the globe and provide them with paramilitary training in preparation for a "race war." Barasneh and other members of The Base communicated with each other through online platforms and encrypted online messaging applications. In these communications, Barasneh and others discussed, among other things, acts of violence against Jewish Americans and non-white Americans, Base military training camps, and ways to make improvised explosive devices.
>
> Starting around September 13, 2019, and continuing through around September 21, 2019, Barasneh participated in an online group chat with other Base members, including R.T., during which they agreed to oppress, threaten, and intimate African-Americans and Jewish Americans, who they viewed as enemies of the white race. A purpose of the agreement was to show the strength and cohesion of The Base, as well as to terrorize Jewish citizens so they would fear for their physical safety and refrain from freely exercising their rights to use and hold property in the same manner as non-Jewish white citizens. To this end, R.T. directed that between September 20-25, 2019, Base members should vandalize property owned by or associated with non-white and Jewish Americans. For example, R.T. told the group to "get out and act. Flyers, windows, and tires." He noted that arsons, breaking windows, and slashing tires are near impossible to track. In response to R.T.'s statements, Barasneh responded, "I agree with that . . . calculated action." Barasneh went on to write "imagine if across the country on local news, Everyone is reporting on new nazi presence." R.T. responded as part of the chat, "20th-25th, vandalize my friends. We'll push back on the enemy as they push bacjk [sic]." Another member of the chat wrote "No point in random vandalizing… Much more effective if its targeted," to which Barasneh responded "^^ MAKE IT WORTH IT." As part of the chat, Barasneh wrote "Take your time, plan your out your AO." Later on in the group chat, Barasneh wrote, "Our op will be a perfect fuck you to these kikes if we become terrorists." R.T. later wrote a long entry titled "Operation Kristallnacht," discussing why this was the time to act, to which Barasneh responded "Sieg Heil."
>
> Following this agreement among Base members to terrorize non-white and Jewish Americans, Barasneh searched the internet for Jewish targets in Wisconsin. For instance, Barasneh's Google search history

3

shows that on September 20, 2019, he searched for "jewish wisconsin" and "nazi propaganda," and he visited the website of the Beth Israel Sinai Congregation, in Racine, Wisconsin. Thereafter, on the evening of September 21, 2019, Barasneh went to the Beth Israel Sinai Congregation synagogue in Racine and spray-painted anti-Semitic words and phrases, as well as a swastika and the symbol for "The Base," on various parts of the building. The Beth Israel Sinai Congregation is organization consisting of Jewish members and guests who worshiped and conducted other religious activities at the Racine synagogue.

On or around September 22-23, 2019, after he vandalized the Beth Israel Sinai Congregation synagogue, Barasneh used Google to search for news about the vandalism. Barasneh then sent links to news stories about the crime to R.T., confirming that he (Barasneh) followed through on their agreement.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, the offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: up to 10 years in prison; a fine of up to 250,000; up to 3 years of supervised release; and a $100 mandatory special assessment. The parties further recognize that a restitution order may be entered by the court.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

4

## ELEMENTS

8.　The parties understand and agree that in order to sustain the charge of conspiracy against rights as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

1. The conspiracy to injure, oppress, threaten, or intimidate one or more persons as charged in Count One existed; and

2. The defendant knowingly became a member of the conspiracy with an intent to further the conspiracy; and

3. The defendant intended to deprive non-white or Jewish citizens in the free exercise or enjoyment of the right to hold or use real or personal property in the same manner as that right is enjoyed by white citizens, which is secured by the Constitution or laws of the United States. The government is not required to prove that the defendant knew this right was secured by the Constitution or laws of the United States;

4. One or more of the intended victims was present in a State of the United States.

## SENTENCING PROVISIONS

9.　The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10.　The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11.   The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

12.   The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

13.   The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual (U.S.S.G.) § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

15. The parties understand that the government will recommend to the sentencing court that the applicable base offense level for the offense is 12 under U.S.S.G. § 2H1.1(a)(2).

## Hate Crime Motivation

16. The parties understand that the government will recommend to the sentencing court that a 3-level increase for selecting victims and property based on religion/ethnicity is applicable under U.S.S.G. § 3A1.1(a).

## Acceptance of Responsibility

17. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing.

## Sentencing Recommendations

18. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

19. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

20. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

21. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the

8

sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

22. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## **FINANCIAL MATTERS**

23. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

24. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly:

cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

## Special Assessment

25. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Restitution

26. The defendant agrees to pay restitution as ordered by the court. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

27. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would

have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d.    At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e.    At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

28.    The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

11

29. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

30. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

31. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

32. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

33. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

34. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## **EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT**

35. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed

13

with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

36. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 7-14-20

YOUSEF O. BARASNEH
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 07-14-2020

JOHN CAMPION
Attorney for Defendant

For the United States of America:

Date: 7/17/2020

MATTHEW D. KRUEGER
United States Attorney

Date: 07-16-2020

BENJAMIN PROCTOR
Digitally signed by BENJAMIN PROCTOR
Date: 2020.07.16 10:22:33 -05'00'

BENJAMIN PROCTOR
Assistant United States Attorney

15